**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**Garland W. SIMS, Appellee.**

No. 3855.

Court of Civil Appeals of Texas.

Waco.

Sept. 21, 1961.

Reformed and affirmed
Oct. 5, 1961.

Rehearing Denied Oct. 26, 1961.

Arterbury, Hoover & Graham, Houston, for appellant.

Raymond L. McDermott, Albert P. Jones, Houston, for appellee.

McDONALD, Chief Justice.

This is a FELA case in which plaintiff sought recovery for alleged personal injuries sustained while working in defendant railroad's shops, in Settegast Yards, Houston, Texas, from October 1954 to January 1957. Plaintiff was a pipefitter who worked on engines in the roundhouse. He alleged that he suffered injuries as a result of exposure to noxious fumes and gases given off by the various engines and locomotives in such shops.

■ Trial was to a jury which, in answer to special issues, found:

1) Between October 1954 and January 1957, while plaintiff was working in Settegast shops, the defendant railroad company failed to furnish him a reasonably safe place in which to work.

2) Such failure was a proximate cause of injury to plaintiff.

3) Defendant railroad company failed to furnish proper ventilation within such shop.

4) Such failure was a proximate cause of plaintiff's injury.

5) The failure of defendant railroad company to provide direct vents or smoke jacks from the exhausts of the Diesel engines was negligence.

6) Such was a proximate cause of injury to plaintiff.

7) The defendant railroad's running of several Diesel engines at one time within the shop was negligence.

8) Such negligence was a proximate cause of injury to plaintiff.

9) 10) 11) 12) & 13) acquit defendant of negligence.

14) Plaintiff was damaged $85,000.

The Trial Court entered judgment for plaintiff upon the foregoing verdict.

Defendant appeals on 7 points, contending:

1) There is no evidence to support the answers to issues 1, 3, 5, and 7. (findings of negligence).

2) There is no evidence to support the answers to issues 2, 4, 6, and 8. (findings of proximate cause).

3) and 4) The answers to issues 1, 2, 3, 4, 5, 6, 7 and 8 are against the great weight and preponderance of the evidence.

5) The Trial Court erred in overruling defendant's motion that plaintiff's counsel be instructed not to refer to defendant's refusal to have tests made by a chemist of plaintiff's choice to determine whether carbon monoxide was given off by the Diesel engines in Settegast shop.

6) The Trial Court erred in overruling defendant's objection to issues 1, 3 and 5.

7) The verdict and judgment is grossly excessive by at least $75,000.

We revert to defendant's contentions 1 through 4. Plaintiff was a pipefitter in defendant's Diesel engine repair shop. He contended and testified that because of alleged insufficient ventilation in the shops, he suffered injury from inhaling the fumes and gases given off by the locomotives. The record reflects that in September, 1954, plaintiff complained of the harmful effects on his body of being required to work in a place where Diesel fumes were permitted to concentrate in large quantities. He became ill and was sent to the Missouri-Pacific Hospital in Palestine. There a diagnosis was made that plaintiff was suffering from carbon monoxide poisoning. The record does not suggest that he could have gotten this poisoning at any place other than his place of employment. The Chief Surgeon called this situation to the attention of the General Claim Agent of the railroad in December, 1954, with a request that more adequate ventilation be provided. In October, 1955, the defendant was made aware by Dr. Young of the existence of carbon monoxide poisoning in the body of plaintiff. A blood test made at that time showed the presence of a significant quantity of carbon monoxide in his system. A request was made that plaintiff be given work where he would not be exposed to Diesel fumes. Plaintiff, in January 1957, had to quit work with the railroad because he could not work around the Diesel exhaust fumes. Dr. Zionts testified that on the basis of his studies and tests, plaintiff was suffering from chronic carbon monoxide poisoning and that plaintiff's symptoms were caused or progressed by prolonged exposure to Diesel fumes. Plaintiff spent a great deal of time in the hospital, suffering from extreme nausea, vomiting and headaches. His condition is such that if he gets behind an automobile exhaust or lawn mower, the conditions re-occur.

The record further reflects that any number of men became sick from the inhalation

of the Diesel fumes in the Settegast shop; that the railroad was familiar with the situation as to bad ventilation, and also with the complaints about men getting nauseated in the shop; but took no action to correct the situation until 1959.

The defendant contends very vigorously that Diesel engines do not give off carbon monoxide in quantities which will do injury to a human. While we think the proof shows to the contrary, we do not think that plaintiff's case is limited and restricted to injury as the result of the inhalation of carbon monoxide, since the record reflects that there are other elements in Diesel fumes capable of causing injury to man, and we think that the record before us sustained the findings of the jury that plaintiff suffered injury as a result of inhalation of the fumes from the Diesel engines.

We think the record reflects that plaintiff was subjected to an unnecessary hazard which could have easily been eliminated, and amply supports the findings of the jury. Moreover, we think that the record as a whole sustains such findings, and that they are not against the great weight and preponderance of the evidence under the rule of law in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

■ Defendant asserts that plaintiff was just more sensitive to the Diesel fumes than are ordinary persons, and that defendant was entitled to assume the employee to be in good physical condition and not peculiarly subject to any special weaknesses. Here, the defendant was on notice of the conditions; on notice that the plaintiff suffered from inhalation of the fumes; on notice that others were suffering from inhalation of the Diesel fumes, and took no steps to remedy the situation. In a FELA case, recovery will be permitted wherever the employer's fault in any degree, no matter how small, contributes to the injury. Rogers v. Missouri-Pacific Ry. Co., 352 U.S. 500, 77 S.Ct. 443, 448, 1 L.Ed.2d 493. In the Rogers case, supra, the U.S. Supreme Court states the rule thusly:

"Under this statute the test of a jury case is simply whether the proofs jus-tify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result of other causes * * *. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due '*in whole or in part*' to its negligence."

See also Thompson v. Quarles, Tex.Civ. App., 297 S.W.2d 321, W/E Ref. n. r. e.; 15 Am.Jur. p. 490, Sec. 81. We think plaintiff's condition is traceable to his working conditions; and as noted, that the jury's answers to issues 1 through 8 are amply supported by the evidence. Defendant's contentions 1 through 4 are overruled.

■ Defendant's 5th contention is that the Trial Court erred in overruling defendant's motion that plaintiff's counsel be instructed not to refer to defendant's refusal to permit additional tests to be made by a chemist of plaintiff's choice, to determine whether carbon monoxide was given off by the Diesel engines. The record reflects that defendant's witness, Dr. Tonn, testified that he made tests behind the Diesel engines in Settegast shops, but found no carbon monoxide. Plaintiff's witness, Dr. Rosmussen, testified that technical literature on Diesel engines said that they gave off carbon monoxide. Plaintiff's counsel asked defendant Settegast shop's superintendent if he had any objection to an independent chemist making tests of the exhaust of the Diesel engines in the shop. The super-

intendent said he had no objection but would have to get permission from his superior. Counsel for defendant thereafter agreed the tests could be made if counsel be satisfied with the qualifications of the chemist. A request was made for a 40 minute recess for defendant to make inquiry of the qualifications of the plaintiff's independent chemist. The foregoing took place in the presence of the jury. Thereafter, defendant refused to consent to the making of the test. Plaintiff's counsel thereafter argued the matter to the jury. We think plaintiff was entitled to argue to the jury the defendant's refusal to permit the tests by the independent chemist. See: Anizan v. Paquette, Tex.Civ.App., 113 S.W. 2d 196, W/E Dism. Further, the record reflects that complaint as to the foregoing was made by Bill of Exception which was disallowed by the Trial Judge because same had not been timely filed or presented. Moreover, all of the arguments to the jury are not before us, and we cannot say that the complained of argument was harmful error in view of the argument as a whole or the record as a whole. See rule 434, Texas Rules of Civil Procedure. Contention 5 is overruled.

■ Defendant's 6th contention is that the Trial Court erred in overruling its objection to the submission of issues 1, 3, and 5. We think that issues 1, 3 and 5 to be controlling issues made by the pleadings and evidence. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517. Further to the foregoing, issues 7 and 8 were not objected to, and support the judgment independently of issues 1, 3 and 5. Where a judgment is supported by jury findings which are not vulnerable to attack, any improper submission of other issues will not require a reversal. Galveston H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 50 S.W.2d 247. Defendant's 6th contention is overruled.

■ Defendant's 7th contention is that the verdict and judgment (in the amount of $85,000) is grossly and outrageously excessive by at least $75,000. The record reflects that plaintiff missed 107 days from his work with the railroad between September, 1954 and when he terminated his work

with them in January 1957. At his agreed pay rate, his lost wages amounted to about $2,000. Of course he suffered from pain with his attacks, and also from mental anguish. The record reflects that after he left the employ of the railroad in January 1957, he did no work until June of 1957, when he went to work as Manager of the Harris County Fresh Water District. Here he worked in an air conditioned office. His employment here was terminated when the City of Houston took over the water district. Thereafter he rented 350 acres of pasture and kept cattle on it. Thereafter he bought an interest in some rodeo stock but sold them; he bought some hogs but sold them; thereafter he worked as superintendent of a utilities construction company. Plaintiff testified he terminated the foregoing employments because he became ill and nauseated each time he became hot. Thereafter (and at the time of trial) plaintiff was a partner in the operation of a used car lot. He keeps the records and stays in an air conditioned office. He testified that he becomes sick any time he becomes hot or does manual labor. Other than as noted above, plaintiff is up, out and about his business. From the foregoing and from the record as a whole, it is our view that the verdict and judgment are excessive in the amount of $42,500, and that this case should be reversed for this reason only. However, plaintiff is given 10 days from this date in which to file a remittitur of $42,500.00. Rule 440, T.R.C.P.; State v. Meyers, Tex.Civ.App., 292 S.W.2d 933, W/E Ref. n. r. e. If such remittitur is filed within the time indicated, the judgment of the Trial Court will be reformed and affirmed.

Reversed and remanded.

### After Entry of Remittitur

Plaintiff having filed a remittitur in the amount of $42,500, as suggested by the former opinion of this court, the judgment of the Trial Court is reformed in conformity with said remittitur, and as reformed, is affirmed.

Costs of appeal to date of remittitur are taxed against plaintiff.

Reformed and affirmed.